**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 170778-U

Order filed January 8, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| ROBERT JAMES CURRY, | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| Plaintiff-Appellee, | ) | Iroquois County, Illinois |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES E. CORBLY, | ) | |
| | ) | |
| Defendant-Appellant, | ) | Appeal No. 3-17-0778 |
| | ) | Circuit No. 15-CH-43 |
| (Anna Commiskey; Christine L. Commiskey; | ) | |
| Sarah R. Commiskey a/k/a Sarah R. Pangborn; | ) | |
| Unknown Devisees of Kenneth Lee Corbly, | ) | |
| Deceased; Unknown Devisees of Marjory I. | ) | |
| Corbly, Deceased; Unknown Owners and | ) | Honorable |
| Non-Record Claimants and Marvin Vogel, | ) | James B. Kinzer, |
| Defendants). | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Lytton and Wright concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   In an action for the partition of jointly-owned real estate, the trial court properly granted summary judgment in the plaintiff's favor and properly entered a judgment of partition.

¶ 2        Plaintiff, Robert James Curry (Curry), filed a complaint in the circuit court of Iroquois County seeking the partition of farm land that he co-owned with defendant James E. Corbly (Corbly), among others. Curry filed a motion for summary judgment, which Corbly opposed. The trial court granted Curry's motion and entered a judgment of partition. Corbly appeals the trial court's grant of summary judgment and its judgment partitioning the land.

¶ 3                                    FACTS

¶ 4        Curry filed a verified complaint for the partition of a parcel of land located in southern Iroquois County. The complaint alleged, in relevant part, that: (1) Curry was the owner in fee simple of and undivided one-half interest in the land; (2) Corbly owned or claimed an interest in the land; (3) three other named defendants, Anna Commiskey, Christine Commiskey, and Sarah Commiskey, also known as Sarah R. Pangborn, also owed or claimed an interest in the land; (4) Defendant Martin Vogel was a tenant farmer who resided on the property; (5) the land consisted of approximately forty acres of bare farm ground and there were no structures on the land; (6) there were no homestead interests in the land; and (6) a survey of the land was recorded in on May 7, 2012, in Iroquois County, which Curry attached to his complaint.

¶ 5        Curry's complaint contained the following allegations as to how he had acquired title in a portion of the land. By 1978, fee simple title to all of the land was vested in Curry's grandmother, Dora Corbly (Dora), who passed away in 1984. At the time of her death, Dora was a widow. Dora's will was admitted to probate in 1984 and recorded in Iroquois County in 2008. Curry attached a photocopy of the recorded will to his complaint. He also attached photocopies of various orders issued in the estate proceedings, including the Order admitting Dora's will into probate, the Inventory (including the land), and the Order declaring heirship. In her will, Dora

2

devised all of the land to her son and sole devisee, Ralph Corbly (Ralph). At that time, fee simple title to the land vested in Ralph.

¶ 6    Ralph passed away in 1997. Ralph was a bachelor at the time of his death. Ralph's will was admitted to probate in 1997. Curry attached photocopies of various probate documents to his complaint, including the Order admitting Ralph's will to probate, the Inventory (including the land), and the Order declaring heirship. In his will, Ralph devised all of his personal and real property, include the land at issue, to his three siblings, Marjory Corbly (Marjory), Barbara Corbly Curry (Barbara), and Kenneth Corbly (Kenneth), each of whom survived him. Each of the three siblings received an undivided one-third of the land. Fee title to each one-third portion was vested in each sibling accordingly.

¶ 7    Barbara died intestate in 2003. She was survived by her husband, Harvey Curry (Harvey), and her only child, Robert James Curry (Curry), the plaintiff in this case. Pursuant to the Illinois law of intestate succession, Barbara's undivided one-third interest in the land descended to Harvey and Curry, who were Barbara's sole heirs-at-law. Harvey and Curry each received half of Barbara's interest, *i.e.*, each received an undivided one-sixth interest in the land. Harvey subsequently conveyed his undivided one-sixth interest to Curry by means of a quitclaim deed dated August 8, 2005, which was recorded in Iroquois County on October 24, 2005. Curry attached a photocopy of the recorded quitclaim deed to his complaint.

¶ 8    Kenneth died a widower on October 21, 2004. Based on prior conversations with Barbara, Curry alleged on information and belief that: (1) Kenneth had two children, Corbly (the defendant in this appeal) and Diane Commiskey (Diane), who predeceased Kenneth; (2) Diane left three daughters, Anna Commiskey, Christine Commiskey, and Sarah Commiskey (the

3

Commiskeys),[1] who survived Kenneth and were his heirs or devisees. Curry named each of the Commiskeys as a defendant in this case because he believed that each had a fractional interest Kenneth's undivided one-third interest in the land.

¶ 9        Marjory died on November 29, 2004. She never married and she had no children. Curry alleged, on information and belief, that Marjory executed a will on April 3, 1997, which was deposited in the office of the Cook County Circuit Clerk on December 20, 2004, but was never probated. Marjory's purported will left her entire estate, including her undivided one-third interest in the land, to The Marjory I. Corbly Trust, the sole beneficiary of which was St. Patrick's High School in Chicago (St. Patrick's). Brother Conrad Diebold, the president of St. Patrick's, was named as successor trustee of the trust. In March of 2013, the Board of Trustees of St. Patrick's directed Brother Diebold to quitclaim St. Patrick's interest in the land to Marjory's heirs according to the Illinois law of intestate succession. At that time, Marjory Corbly's surviving heirs-at-law were Curry and Kenneth's heirs (*i.e.*, Corbly and the three Commiskeys).

¶ 10        On March 22, 2013, Brother Diebold, as successor trustee of Marjory's trust, signed a quitclaim deed conveying St. Patrick's undivided one-third interest in the land to Marjory's surviving heirs. The quitclaim deed was recorded in Iroquois County on April 4, 2013. The deed conveyed an undivided one-sixth interest to Curry and an undivided one-sixth interest to Kenneth's heirs.

---

[1] At the time this appeal was brought, each of the Commiskeys was married, and each had changed her name after marriage. Anna Commiskey is now Anna Halberstadt, Christine Commiskey is now Christine Steffey, and, Sarah Commiskey is now Sarah Bruce (formerly known as Sarah Pangborn).

4

¶ 11        Accordingly, Curry alleged that, at the time he filed his complaint for partition, title in the land was vested as follows: Curry had title in an undivided one-half of the land;[2] Corbly had title in an undivided one-fourth of the land; and the Commiskeys collectively had title to an undivided one-fourth of the land.

¶ 12        In his complaint, Curry asked the trial court to appoint a commissioner to examine the land and report to the court whether Curry's portion of the land could be physically divided from the defendants' portions without manifest prejudice to the value of the land.  If the commissioner found the land incapable of such division, Curry requested that the trial court order the commissioner to value the land and that the land be sold in the manner defined by law at a public sale by open bid auction conducted by the Iroquois Country Sheriff.  Curry further asked the court to determine Curry's title to be an undivided one-half interest in fee simple, or, in the alternative, to vest such title in Curry.  Finally, Curry asked the trial court to partition the land and to award him "the East Twenty Acres" of the property free and clear of any interests of the defendants, subject to any lease of Martin Vogel.  Corbly filed an Answer to Curry's complaint which, among other things, denied that Curry had established that he was the owner of an undivided one-half interest in the land.

¶ 13        On September 15, 2017, Curry filed a combined motion to default the Commiskey defendants and a motion for summary judgment against Corbly and Vogel.  He noticed his summary judgment motion for hearing on September 22, 2017.  He also filed a notice of trial for

_____

[2] This included the undivided one-sixth interest that he received from Barbara at the time of her death pursuant to the Illinois law of intestate succession, the undivided one-sixth interest he received from his father (Harvey) via quitclaim deed, and the undivided one-sixth interest he received from Brother Diebold, as the successor trustee of Marjory's trust, by quitclaim deed.

September 27, 2017. In his motion for default, Curry argued that the Commiskeys were in default because they had neither appeared nor answered his complaint.

¶ 14    In his motion for summary judgment, Curry argued, *inter alia*, that: (1) Curry had presented uncontroverted evidence that established the chain of title and Curry's entitlement to a judgment of partition as a matter of law; (2) in response to this evidence, Corbly presented only general denials in his Answer which were not supported by evidence and were therefore insufficient to create a genuine issue of material fact; (3) the affidavit submitted by Vogel (the tenant farmer on the land) established that the land was open, flat, uniform crop ground without watercourses or any other physical feature that would complicate the division of the land. Curry asked the trial court to default the Commiskeys and to award him 50 percent interest in the land free and clear of any interest of any of the defendants, subject to Vogel's rights as a tenant farmer. Curry further asked the court to award the remaining 50 percent interest in the land to the heirs of Kenneth Corbly (*i.e.*, to Corbly and the Commiskeys), subject to Vogel's rights. As to how the land should be partitioned, Curry asked the trial court to award him "the west half of the land" and to award the east half of the land to the heirs of Kenneth Corbly.

¶ 15    Corbly did not file a written response to Curry's motion for summary judgment. On September 20, 2017, Corbly informed the court that he would be unable to attend the September 22, 2017, hearing on Curry's motion for summary judgment because his wife was ill. The trial court continued the hearing on that motion to September 27, 2017, with the trial scheduled for the same day.

¶ 16    On September 27, 2017, Curry's counsel appeared before the trial court, as did Corbly and Sara Bruce (nee Commiskey). Corbly and Bruce each appeared on their own behalf without counsel. The trial court proceeded to hear arguments on Curry's motion for summary judgment.

6

Curry's counsel noted that Curry had presented various deeds and court records with his complaint and argued that those documents established Curry's title by descent as well as the interests that each party held in the property. He noted that Corbly had presented no documents that contradicted any of the documents presented by Curry, and he maintained that Corbly had "failed to raise a significant or substantial defense to anything that is alleged in the complaint as a basis for the petition." Bruce accepted Curry's account of the parties' respective interests in the land and agreed to the partition requested by Curry.

¶ 17    The trial court then asked Corbly what objection he had to Curry's motion for summary judgment. Corbly responded that there were "a lot of questions" that he did not yet have answered. Corbly contended that Barbara and Harvey had received "some sort of assistance from the government" and that Barbara had a Medicaid I.D. At that point, the trial court noted that Corbly was testifying, and placed him under oath. The court then asked Corbly what issues the court needed to resolve, noting that "there may be a lien in favor of the state of some sort, but I don't know how that affects the title."

¶ 18    Corby responded that, before he would agree to any division of the land, he "want[ed] to make sure that things [were] free and clear." He testified that he had been able to determine that Barbara had a Medicaid I.D. number and file number, and he contended that "she wouldn't have that if she didn't get some assistance from Title 19."[3] He stated that he had "hearsay from people at Illiana," but "they would not give [him] a printout on anything." Corbly further testified that he had tried to get that information through a FOIA request, but that "people from FOIA [had] refused *** to give [him] that information due to [a] privacy matter." He stated that

_____

[3] Corbly was referring to Title XIX of the federal Social Security Act (42 U.S.C. §§ 1396a to 1396v, and §§; 1301-1320(d)(8) (2016)), which provides for Medicaid benefits and is administered by the Centers for Medicare and Medicaid Services.

7

he then went to his Congressman, who looked at the information obtained by Corbly and "verified" it in a letter that Corbly sent to the parties.

¶ 19    The trial court then stated:

"So, Mr. Corbly, you've given me nothing that suggests I will need to spend time listening to evidence this afternoon. What you've told me basically is that you don't really have some of the evidence that you would like to present so I'm going to allow the motion for summary judgment."

¶ 20    The court then declared that "the property is owned one half by Robert James Curry, one quarter as tenants in common among Christine Commiskey, Sarah Commiskey and Anna Commiskey, and one quarter by *** James Corbly." The court directed Curry's counsel to prepare an order to that effect. It then informed Corbly that Curry's counsel would send him a copy of the order "by email or something like that," and that Corbly could "take a look at it and if [Curry's counsel] needs to change your middle initial or something he can do that."

¶ 21    Corbly then stated that he would continue his investigation into "the Title 19 and into the information on the Veterans Affairs." The court responded that "that doesn't really affect us here as far as you are concerned." The court asked Corbly, "[s]o then there might be a lien on the one half interest of Mr. Curry?" Corbly responded that "[t]here might be two." The court then stated, "[o]kay. They are out there if they are out there." The court then adjourned the hearing.

¶ 22    Pursuant to the trial court's directive, Curry's counsel prepared a proposed order granting his motion for summary judgment and entering a judgment of partition. The proposed order correctly reflected the parties' respective interests in the land as determined by the trial court. However, in partitioning the land, the proposed order assigned to Curry the "East Half" of the

property and assigned to Corbly the "West Half" of the West Half" of the property. As noted above, in both his verified complaint and in his motion for summary judgment, Curry had asked the court to award him the *West* half of the property, not the East half.

¶ 23   The trial court signed the proposed order on October 5, 2017. Curry did not present a copy of the draft order to Corbly before it was presented to the court. Corbly first received a copy of the trial court's signed Order from the Clerk of the Circuit Court on October 17, 2017, following Corbly's request to the Clerk. Corbly did not receive a copy of the Order from Curry until October 31, 2017. After he received and reviewed the Order, Corbly sent an e-mail to the trial court noting the alleged discrepancy between the court's final Judgement of Partition and its prior ruling on summary judgment and asked the trial court whether he was reading the final partition judgment correctly. He also e-mailed Curry's counsel stating that, during the hearing on Curry's motion for summary judgment, Corbly had agreed to accept the western section of the land, not the eastern section. However, Corbly did not file a written request to vacate the trial court's October 5, 2017, final partition judgment based on improper notice or on the discrepancy between the judgment and Curry's motion for summary judgment.

¶ 24   This appeal followed.

ANALYSIS

¶ 25   The Partition Act (735 ILCS 5/17-101 *et seq.* (West 2016)) provides a procedure by which lands which are held in some form of co-ownership may be equitably severed into individual interests. To that purpose, the statute requires that a partition complaint particularly describe the land sought to be divided and that it set forth the interests of all parties interested therein "and of every person who, upon any contingency, may be or become entitled to any beneficial interest in the premises." 735 ILCS 5/17–102 (West 2016). The complaint shall ask for

the division of the property according to the respective rights of the parties interested therein, or, if a division cannot be made without manifest prejudice to the owners, that a sale thereof be made and the proceeds be divided according to the respective rights of the parties. *Id.* Every person having an interest in the property who is not a plaintiff must be joined as a defendant. 735 ILCS 5/17–103 (West 2016). The plaintiff has the burden to prove all of the affirmative allegations in his complaint for partition, including that he owns an undivided interest in the land and that he and the alleged co-owners have interests in the property that are subject to partition. *Wright v. Wright*, 131 Ill. App. 3d 46, 50 (1985); *Owen v. Village of Brookport*, 208 Ill. 35, 46 (1904).

¶ 26        The court must ascertain and declare the rights, titles, and interest of all the parties to the action and shall enter judgment according to the rights of the parties. 735 ILCS 5/17–105 (West 2016). In the event the property cannot be divided among the parties without manifest prejudice, the court shall order the property to be sold at public sale. *Id.* The Partition Act gives the court authority to, among other things, "investigate and determine all questions of conflicting or controverted titles, and remove clouds upon the titles to any of the premises sought to be partitioned." 735 ILCS 5/17–124 (West 2016). Under this provision, courts have determined questions of ownership, rents, and mechanics' liens (see *Pollack v. Kuhn*, 96 Ill. App. 2d 82, 85 (1968)) and the value of improvements made to, or crops growing on, the land subject to partition (see *Dennis v. Silzer*, 48 Ill. App. 3d 468, 471 (1977)).

¶ 27        Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *County of Cook v. Village of Bridgeview*, 2014 IL App

10

(1st) 122164, ¶ 10. A trial court's ruling on a motion for summary judgment is reviewed *de novo*. *LaSalle Bank, N.I. v. First American Bank*, 316 Ill. App. 3d 515, 521 (2000).

¶ 28    Corbly argues that the trial court committed several reversible errors in grating Curry's motion for summary judgment and in entering the Judgement of Partition. We address each of Corbly's contentions in turn.

¶ 29                              1. Jurisdiction and Venue

¶ 30    As a threshold matter, Corbly argues that the trial court lacked jurisdiction to "decide [Curry's] right to own property in Iroquois County." Corbly concedes that an action to divide land under the Partition Act must be brought in the county where the property is located, as it was in this case. However, he argues that, before bringing an action for partition, a plaintiff must first establish that he has an ownership in the land at issue. According to Corbly, that may only be done in the county where the plaintiff acquired such an interest. Because Curry seeks to establish his interest through heirship from Barbara, Corbly maintains that Curry was required to bring an action to establish his ownership interest in the county where Barbara resided, which was Vermilion County. In support of this argument, Corbly relies entirely upon section 5-1 of the Illinois Probate Act (755 ILCS 5/5-1 (West 2016)). That section provides that, when the estate of a decedent or missing person is administered in Illinois, the administration shall be in the county where the decedent "has a known place of residence," unless the decedent has no known place of residence. Here, it is undisputed that, at the time of her death, Barbara resided in Vermilion County. Thus, Corbly maintains, Curry's claim for ownership (which was a necessary

11

precondition of his claim for partition) had to be brought in Vermilion County, not in Iroquois County.

¶ 31　　Corbly's argument misses the mark, for several reasons. First, Corbly assumes that establishing title or interest in a portion of land for purposes of a partition claim must be brought in a probate proceeding because "[t]o prove any interest in real estate is a question of administration of an estate." Contrary to Corbly's assumption, however, the Partition Act gives a circuit court presiding over a partition action the authority to "adjudicate," "ascertain," and "declare" "the rights, titles and interest of all the parties in [a partition action] action," and requires the court to enter judgment according to the rights of the parties. 735 ILCS 5/17-105 (West 2016). Moreover, section 124 of the Act gives the circuit court in partition actions the power to:

> "investigate and determine all questions of conflicting or controverted titles, and remove clouds upon the titles to any of the premises sought to be partitioned; vest titles, by its order, in the parties to whom the premises are allotted, without the forms of conveyances by minors or unknown heirs or other parties to the action." 735 ILCS 5/17-124 (West 2016).

Accordingly, by the Partition Act's plain terms, the circuit court in the instant action had jurisdiction to adjudicate the parties' interests in the land in determining whether and it what manner the land should be partitioned. See, *e.g.*, *Peters v. Dicus*, 254 Ill. 379.

¶ 32　　Moreover, because Corbly did not challenge the trial court's jurisdiction over his person prior to filing his Answer to Curry's complaint, he has waived any objection as to personal

12

jurisdiction. 735 ILCS 5/2-301(a-5) (West 2016).[4] Even if he had filed such an objection, the objection would have failed because Corbly submitted to personal jurisdiction in Illinois by virtue of the fact that he had an ownership interest in real estate located in Illinois. 735 ILCS 2-209(a)(3) (West 2016).

¶ 33        To the extent that Corbly's objection is to venue, rather than jurisdiction, any such objection fails. As an initial matter, "[a]ll objections of improper venue are waived by a defendant unless a motion to transfer to a proper venue is made by the defendant on or before the date upon which he or she is required to appear or within any further time that may be granted him or her to answer or move with respect to the complaint." 735 ILCS 5/2-104(b) (West 2016). Corbly did not file a motion to transfer venue at any time before the trial court. Accordingly, he has forfeited any argument of improper venue on appeal. *Hines v. Dresser Industries, Inc.*, 137 Ill. App. 3d 7, 12 (1985) (defendant waived objection to venue even though it filed a motion to transfer case to proper venue only one day after it was required to appear before the circuit court); see also *Mabry v. Boler,* 2012 IL App (1st) 111464, ¶ 24 (arguments not raised before the circuit court are forfeited and may not be raised for the first time on appeal).

¶ 34        However, even if Corbly had objected to venue in a timely manner before the trial court, his objection would not have succeeded. As noted above, the Partition Act provides that a complaint for partition must be filed "in the circuit court of the county where the premises or part of the premises are situated." 735 ILCS 5/17-101 (West 2016). The land sought to be partitioned in this case is located in Iroquois County, which is where the action was brought.

¶ 35                                2. Liens

---

[4] Section 301 of the Code of Civil Procedure was amended in 2018, after the trial court's decision was issued in this case. The provision cited above, in relevant part, is included in section 301(a-6) of the amended statute.

13

¶ 36    Corbly also argues that the trial court erred by granting Curry ownership of an undivided one-half of the land in fee simple "free and clear of any interest of the defendants" because he claims there were liens against the land. Corbly notes that the Probate Act defines an "[i]nterested person" in estate proceedings as "one who *** has a financial interest *** which may be affected by the action *** including a[] creditor." 755 ILCS 5/1-2.11 (West 2016). Corbly contends that, by this definition, he has a financial interest that may be asserted against Curry's portion of the land because he has paid more than 88% of the property taxes and assessments on such land and Curry has not reimbursed him for any share of those payments. Corbly claims that Curry owes him $4008.95 plus interest for his share of these taxes and for other expenses.

¶ 37    Corbly further notes that Barbara applied for Medicaid/Title XIX funds in June 2000 and received financial assistance under Title XIX for 39 months before she died. Because the Medicaid Estate Recovery Program requires reimbursement from the estate of a person who received Medicaid benefits up to the amount of the medical assistance paid, Corbly speculates that the federal government might have a substantial claim against Barbara's estate. Based on this assumption, Corbly argues that Curry could not have inherited any portion of Barbara's interest in the land "free and clear of" the federal government's interest.

¶ 38    We do not find these arguments to be persuasive. As an initial matter, Corbly's suggestion that the federal government has a claim against Barbara's estate is speculative. During his testimony in opposition to Curry's summary judgment motion, Corbly opined that the federal government "might" have a lien against Curry's interest in the land, but he presented no competent evidence suggesting that was the case. By his own admission, his speculation regarding a possible government lien was based on "hearsay from people at Illana," and he had

14

not been able to obtain any documentation from Illana or from any other source that supported his claim. He sent the trial court and Curry a letter that his local congressman wrote to the Center for Medicare and Medicaid Services that he claimed "verified" his claim of that a government lien existed. However, that letter merely reported *Corbly's allegation* that Barbara had committed Medicare fraud in her July 2000 Title XIX Medicaid eligibility application; it did not provide any independent "verification" of Corbly's allegation.

¶ 39    In addition, even assuming *arguendo* that Curry owed Corbly money for property taxes and other expenses paid by Corbly (which Curry disputes), that fact would not support a reasonable inference that Corbly had a valid and enforceable lien on Curry's interest in the land. The creation of enforceable liens against real estate is governed by section 12-101 of the Code of Civil Procedure (Code) (735 ILCS 5/101 (West 2016)). That section provides that, in order to create an enforceable lien, a creditor must obtain a court-ordered judgment lien against the real property at issue and record the judgment in the county where the property is located. *Id.*; see also *Northwest Diversified, Inc. v. Desai*, 353 Ill. App. 3d 378, 386 (2004) ("A judgment lien is created once a certified copy or memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located.") These statutory requirements, among others, must be strictly complied with in order to create an enforceable judgment lien. *Northwest Diversified, Inc.*, 353 Ill. App. 3d at 387; *Dunn v. Thompson*, 174 Ill. App. 3d 944, 947 (1988). "A valid judgment, in order to create a lien, must possess two qualifications: (1) it must be final, valid, and for a definite amount of money; and (2) it must be such a judgment that execution may issue thereon." *Northwest Diversified, Inc.*, 353 Ill. App. 3d at 386 (quoting *Dunn*, 174 Ill. App. 3d at 947).

15

¶ 40    In this case, Corbly has merely alleged that Curry owes him money. He has not alleged, much less demonstrated by competent evidence, that he has complied with any of section 5/101's requirements for creating a valid and enforceable judgment lien against Curry's interest in the land. For example, he has not alleged that he obtained a final judgment lien against Curry's real property and recorded the judgment in the county where the land was located. Without such allegations, he has not created an issue of material fact as to the existence of a valid, perfected and enforceable lien against Curry's interest in the land. See *Northwest Diversified, Inc.*, 353 Ill. App. 3d at 386.

¶ 41    Further, even if Corbly had submitted evidence capable of supporting the existence of an enforceable judgment lien, that would not preclude the trial court from entering a judgement of partition. Section 114 of the Partition Act provides that "[a] person having a mortgage, attachment, or other lien on the share of a part owner shall be concluded by the judgment of partition so far as it relates to the partition and the assignment of the shares, but his or her lien shall remain in full force upon the part assigned to or left for such part owner." 735 ILCS 5/17-114 (West 2016). Accordingly, even assuming *arguendo* that Corbly or some other third party had an enforceable lien on Curry's or Barbara's property interest, all such parties would be bound by the partition judgement regardless of any such lien, and the parties would have to enforce their liens after partition against Curry's allotted portion of the partitioned land. They could not prevent the partition merely by virtue of the liens. *Id.*; see also *Macgregor v. Malarkey*, 96 Ill. App. 421, 426 (1901) ("[W]here a judgment or other lien is obtained against the undivided estate of a tenant in common, and partition is afterward made, the lien follows the partition and attaches *** to the premises set off to the debtor"); *Brown v. Sunderland*, 251 Ill. 523 (holding that, in a suit between heirs for partition, the shares set off to the several owners

16

should bear their proper proportion of any claims and legal obligations against the intestate's estate which could be enforced against the land). Thus, having an enforceable lien against a plaintiff's interest in the land is not a viable defense to a partition action, and Corbly could not create a genuine issue of material fact sufficient to forestall summary judgment merely by establishing the existence of such a lien.

¶ 42          3. Discrepancy Between the Summary Judgment Motion and the Partition Order

¶ 43          Corbly also argues that the trial court erred by entering the Judgment of Partition because that judgment contradicted the provisions of the Curry's motion for summary judgment, which was the basis for the court's order granting summary judgment in Curry's favor. The prayer for relief in Curry's summary judgment motion asked the trial court to allot "the west half of the land" to Curry and east half of the land to the heirs of Kenneth Corbly. The trial court granted that motion. However, the final Judgment of Partition (the terms of which had been prepared by Curry's counsel after the trial court granted Curry's motion for summary judgment) allotted the "East Half" of the property to Curry and the "West Half" of the West Half" of the property to Corbly. Curry argues that the Judgement of Partition contradicts the trial court's oral summary judgment Order and is therefore null and void.

¶ 44          We disagree. Corbly correctly notes that, when a trial court's oral pronouncement is in conflict with its written order, the oral pronouncement controls. *In re K.L.S.-P.*, 381 Ill. App. 3d 194, 195 (2008); *In re Taylor B.*, 359 Ill. App. 3d 647 (2005). However, there is no such conflict in this case. In its oral ruling granting summary judgment, the trial court merely declared that the property is owned one-half by Curry, one quarter by the Commiskeys as tenants in common, and one quarter by Corbly. It did not order any specific physical division of the land according to the parties' interests, *i.e.*, it did not specify which particular parcel would be allotted to each

17

party. Thus, the trial court retained discretion to allot the parcels as it saw fit, provided that the division of the land was consistent with each party's interest. Here, each party received exactly the amount of land that it was entitled to receive according to the trial court's prior declaration of their interests. Corbly does not claim otherwise. Accordingly, the trial court's final Judgment of Partition does not conflict with the oral pronouncements it made upon granting Curry's motion for summary judgment.

¶ 45 The fact that the Judgment of Partition conflicts with the prayer for relief in Curry's motion for summary judgment does not require a different result. Corbly has cited no authority suggesting that, when a trial court orally grants a party's motion for summary judgment, the court is required to incorporate all of the specific relief requested in the motion in its final written judgment order, or that the failure to do so invalidates the written judgment. Nor have we found any such authority. As noted above, the trial court's written Judgment of Partition comported with its prior oral ruling declaring the parties' respective interests in the land, and the oral order contained no provision requiring any specific physical division of the land. Thus, the decision of which parcels to award to each party was within the trial court's discretion. Because Curry had asked for the eastern half of the land in his complaint and Corbly had paid for a survey of the western half, the trial court could have reasonably concluded that Curry's request for the western half in his motion for summary judgment was a clerical error. In any event, we find no reversible error in the trial court's allotment of the eastern portion of the land to Curry.[5]

¶ 46 One additional fact raised by Corbly on this issue bears mentioning. Corbly notes that Curry did not send him a copy of the proposed Judgement of Partition that Curry's counsel

---

[5] In addition, although Corbly complained of the physical division specified in the final Judgment of Partition in e-mails he sent to the trial court and to Curry's counsel, he did not file a motion for reconsideration or otherwise ask the trial court to vacate that judgment. Thus, Corbly has forfeited the issue.

18

prepared until weeks after the trial court signed and entered the Order and after Corbly had obtained a copy of the Judgment from the Clerk of the Circuit Court per his own request. During the summary judgment hearing, the trial court directed Curry's counsel to send Corbly a copy of the proposed Order for his review before the Order was entered. Curry's counsel should have abided by the court's directive, and we admonish counsel to avoid this type of error in the future. However, because Corbly did not move to vacate the Judgment of Partition, and because any such motion would have failed on the merits, we will not reverse on this basis.

¶ 47                                    4. Curry's Proof of His Ownership Interest

¶ 48        Corbly further argues that the trial court erred by relying upon "faulty documentation" in determining Curry's ownership of a one-half undivided interest in the land by inheritance from Barbara and by quitclaim deeds signed by Harvey and Brother Diebold. He maintains that the documents submitted by Curry do not establish that he had title to any portion of the land, which Curry was required to establish before obtaining a partition judgment.

¶ 49        We disagree. The documents that Curry attached to his verified complaint showed, in relevant part, that: (1) Ralph devised an undivided one-third of the land to Barbara in his will, which was probated in 1997; (2) Barbara died intestate in 2003; (3) pursuant to Illinois law of intestate succession, Barbara's undivided one-third interest in the land descended to Harvey and Curry, who were Barbara's sole heirs-at-law. Harvey and Curry each received half of Barbara's interest, *i.e.*, each received an undivided one-sixth interest in the land; (4) Harvey subsequently conveyed his undivided one-sixth interest to Curry by means of a quitclaim deed; (5) Marjory conveyed her undivided one-third interest in the land to The Marjory I. Corbly Trust, the sole beneficiary of which was St. Patrick's; (6) Brother Diebold, the president of St. Patrick's, was named as successor trustee of the trust; and (7) In March of 2013, the Board of Trustees of St.

19

Patrick's directed Brother Diebold to quitclaim St. Patrick's interest in the land to Marjory's heirs-at-law according to the Illinois law of intestate succession. At that time, Marjory's surviving heirs-at-law were Curry and Kenneth's heirs (*i.e.*, Corbly and the three Commiskeys); and (8) on March 22, 2013, Brother Diebold, as successor trustee of Marjory's trust, signed a quitclaim deed conveying St. Patrick's undivided one-third interest in the land to Marjory's surviving heirs. The deed conveyed an undivided one-sixth interest to Curry and an undivided one-sixth interest to Kenneth's heirs. Thus, Curry submitted copies of all documents necessary to establish that he had a one-half undivided interest in the land, including all required death certificates, wills, and recorded quitclaim deeds.

¶ 50         Corbly argues that the documents submitted by Curry were either invalid or were otherwise incapable of establishing Curry's title to or interest in the land. Each of Corbly's arguments fails. Initially, we note that Corbly failed to file a verified answer to Curry's verified complaint. Under section 2–605 of the Code (735 ILCS 5/2–605 (West 2016)), when a pleading is verified, every subsequent pleading must also be verified unless the trial court excuses the verification. *Pinnacle Corp. v. Village of Lake in the Hills*, 258 Ill. App. 3d 205, 209 (1994); see also *Marren Builders, Inc. v. Lampert*, 307 Ill. App. 3d 937, 942 (1999). Because Corbly failed to verify his Answer, all of the well-pleaded factual allegations in Curry's verified complaint are deemed admitted by Corbly. *Northbrook Bank & Trust Co. v. 2120 Division LLC*, 2015 IL App (1st) 133426, ¶ 39 (unverified answer is treated as a nullity and the well-pled facts in the verified complaint are deemed admitted); *Florsheim v. Travelers Indemnity Co. of Illinois*, 75 Ill. App. 3d 298, 309 (1979) (the failure to file a verified answer where one is required constitutes a failure to plead and results in all well-pled facts being deemed admitted). Here, there is no indication in the record that the trial court excused the verification. Therefore, we must ignore the allegations in

20

plaintiff's unverified answer, and defendants' well-pleaded facts (including all factual allegations regarding his ownership interest in the land that are supported by documentation) are deemed admitted. In addition, while Corbly makes multiple assertions regarding the alleged invalidity or inadequacy of Curry's evidence of his ownership interest, he provides no relevant authority in support of most of these assertions. Any such unsupported arguments or assertions are therefore forfeited. *People v. Ward*, 215 Ill.2d 317, 332 (2005); *Luss v. Village of Forest Park*, 377 Ill. App. 3d 318, 331 (2007).

¶ 51        Regardless, Corbly's arguments fail on the merits. Corbly asserts, without support, that a quitclaim deed "does not pass title" and that "to obtain title, a warranty deed is required." Corbly is mistaken. "A quitclaim deed is equally as effectual to pass title as a warranty deed with full covenants." *Favata v. Mercer*, 409 Ill. 271, 276 (1951). Accordingly, the mere fact that the deeds from Harvey and Brother Diebold to Curry were quitclaim deeds lacking all covenants of title contained in a warranty deed is insufficient to raise the inference that title was not effectively conveyed to Curry though each deed. Further, Corbly's claim that, in order to obtain ownership of one-half of Barbara's interest in the land, Harvey (and presumably Curry) needed to probate Barbara's estate fails because all of Barbara's property, both real and personal, descended to her heirs (Harvey and Curry) immediately upon her death pursuant to the Illinois laws of intestate succession. *Worsley v. Welch*, 317 Ill. 90 (1925) (ruling that an intestate's realty descends to his heirs immediately on his death, and the Probate Court cannot divest the heirs of title).

¶ 52        Corbly raises further questions regarding the validity of the quitclaim deed executed by Brother Diebold. As noted, Marjory's will never probated. Moreover, as Corbly notes, Marjory executed her will before Ralph died. Based upon the latter fact, Corbly argues that: (1)

21

Marjory's will never conveyed any interest in the land to her Trust, because Marjory had not yet inherited her interest in the land from Ralph at the time her will was executed; (2) therefore, Marjory's Trust could not have passed any interest in the land to St. Patrick's, and Brother Diebold's purported quitclaim of such interest back to Curry was a nullity. We do not find this argument to be persuasive. As an initial matter, Corbly cites no authority establishing that Marjory could not have legally conveyed a contingent future interest in the land to her Trust upon her death and directed that such interest pass from the Trust to St. Patrick's. Moreover, the fact that Marjory's will was never probated would not change the result as far as Curry's current interest is concerned, because Brother Diebold quitclaimed Marjory's interest to her heirs-at law (including Curry), just as Marjory's interest would have passed if she had died without a valid will.

¶ 53     We have considered Corbly's remaining arguments on this issue and find that they lack merit. Corbly presented no evidence sufficient to create a genuine issue of material fact as to Curry's holding of title to an undivided one-half of the land.

¶ 54         5. Alleged Violations of Due Process and of the ABA Rules of Professional Conduct

¶ 55     Corbly further argues that the trial court denied him due process of law by: (1) failing to hold a trial; (2) failing to address Corbly's evidence of debts owed to him by Curry; and (3) reneging on its initial statement that it would require Curry to establish title by providing the court "copies of Wills or something that shows that the property passed."

¶ 56     We disagree. As an initial matter, Corbly never raised a due-process argument before the trial court, and has therefore forfeited any such argument. *Travelport, LP v. American Airlines, Inc.*, 2011 IL App (1st) 111761, ¶ 31.

22

¶ 57    However, even if we were to consider Corbly's due process argument, we would reject it. The constitutional guarantee of due process encompasses both procedural and substantive due process. *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 433–34 (2000). Procedural due process is about the specific procedures that have been used to deny a person's life, liberty, or property. *Id.* at 434. Procedural due process "protect[s] persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty or property." *Id.*   Procedural due process generally refers a party's rights to notice, an opportunity to be heard (including the right to present evidence and argument), and an impartial adjudicator.  *Bartlow v. Shannon*, 399 Ill. App. 3d 560, 570 (2010). Substantive due process, on the other hand, prevents the government from taking certain action even if it does provide proper procedural safeguards. *Casanova v. City of Chicago*, 342 Ill. App. 3d 80, 91 (2003); *In re Perona*, 294 Ill. App. 3d 755, 760 (1998) (stating that procedural due process governs methods by which a protected interest may be deprived and that substantive due process imposes absolute limits on the state's ability to act without regard to applicable procedural protections). "Substantive due process depends on the existence of a fundamental liberty interest." (Internal quotation marks omitted.) *Fischetti v. Village of Schaumburg*, 2012 IL App (1st) 111008, ¶ 16.

¶ 58     In this case, the trial court did not violate Corbly's procedural or substantive due process rights in any respect.  It is undisputed that Corbly had notice of Curry's motion for summary judgment and an opportunity to be heard when the court conducted a hearing on the motion. Although Corbly chose not to file a written response to Curry's motion or any affidavits in opposition to the motion, he testified during the hearing and was given the opportunity to present whatever evidence he could in opposition to Curry's motion.  Contrary to Corbly's argument, the trial court addressed Corbly's argument that Curry's debts to Corbly created a lien against

23

Curry's interest in the land. As noted above, the court properly rejected that argument for lack of evidence. Moreover, Curry presented wills, copies of recorded quitclaim deeds, and other documents supporting his claims regarding chain of title, and Corbly had an opportunity to rebut or otherwise respond to those documents before and during the hearing. The court correctly concluded that Corbly failed to create a genuine issue of material fact. Accordingly, contrary to Corbly's argument, the trial court was not required to hold a trial to satisfy Corbly's procedural due process rights. The matter was properly disposed of by summary judgment.

¶ 59    Further, Corbly has not identified the deprivation of any fundamental liberty interest that would give raise to a claim of substantive due process. Accordingly, forfeiture aside, Corbly's due process claims fail.

¶ 60    Finally, Corbly maintains that Curry's counsel violated the ABA's Model Rules of Professional Conduct in various respects. We find no support for this claim in the record, and the Model Rules and of other authorities cited by Corbly do not suggest that any such violation occurred in this case.

¶ 61    CONCLUSION

¶ 62    For the foregoing reasons, we affirm the judgment of the circuit court of Iroquois County granting Curry's motion for summary judgment and entering a Judgment of Partition.

¶ 63    Affirmed.