2021 IL App (1st) 191811-U
No. 1-19-1811

SECOND DIVISION
June 8, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| In re THE MARRIAGE OF: | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| (VERONICA L. DURDOV, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | No. 2015 D 1190 |
| | ) | |
| v. | ) | |
| | ) | The Honorable |
| ERIC A. DURDOV, | ) | Michael A. Forti, |
| | ) | Judge Presiding. |
| Respondent-Appellee). | | |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:* Circuit court order modifying the father's child support obligation reversed where the increase in both parties' incomes was contemplated at the time of the divorce and could not constitute a substantial change in circumstances justifying a modification in his child support obligation.

¶ 2    Petitioner Veronica Durdov appeals an order of the circuit court modifying respondent Eric Durdov's child support obligation. She argues that the court erred in finding that Eric had established that there had been substantial change in circumstance following the dissolution of

their marriage that warranted a decrease in his child support obligation. For the reasons explained herein, we reverse the judgment of the circuit court.

¶ 3    I. BACKGROUND

¶ 4    Veronica and Eric were married on October 21, 2000. They had two children during their union: Sydney born October 2, 2003, and Drew born January 26, 2006. Eric was the primary breadwinner during the marriage, earning $211,000 annually. Veronica, who possessed a Bachelor of Science degree in mechanical engineering and an MBA, worked occasionally as a part-time substitute teacher and earned nominal income during the marriage. In 2015, the parties filed cross-petitions seeking dissolution of their marriage indicating that irreconcilable differences had caused an irretrievable breakdown in their union. During the course of the dissolution proceedings, the parties agreed that Veronica would "immediately retain a career counseling/outplacement service so that she c[ould] evaluate and seek gainful employment." An order was entered on August 26, 2015, reflecting that agreement. Thereafter, the parties negotiated the terms of a Joint Parenting Agreement (JPA)[1] and a Marital Settlement Agreement (MSA).[2]

¶ 5    Pursuant to the terms of the JPA, the parties agreed to share "joint custody of their minor children" and Veronica was designated the children's "primary residential parent." Pursuant to the terms of their MSA, the parties agreed that Eric, who was "employed full- time," would pay Veronica, who was "employed part-time outside the home as a substitute teacher," maintenance and child support. With respect to the issue of maintenance, the MSA required Eric to pay Veronica $3,196 per month during each of the first four years following their divorce and $975 per month in the fifth year following their divorce. The MSA specified that the initial $3,196

_____

[1] The JPA was entered on December 17, 2015; however, the judgment of dissolution of marriage erroneously indicates that the agreement was entered on December 22, 2015.
[2] The MSA was entered on May 5, 2016.

monthly maintenance sum "was calculated by imputing a gross annual income of $20,000 to Veronica and attributing a gross annual income of $211,000 to Eric" while the $975 monthly maintenance sum was "calculated by imputing a gross annual income of $65,000 to Veronica in year 5 and attributing a gross annual income of $211,000 to Eric." The MSA further provided that Eric's maintenance obligation was generally "non-modifiable in duration and amount" except as otherwise provided for in the agreement. With respect to the issue of child support, the MSA provided, in pertinent part, as follows:

"Child Support: Beginning on May 7, 2016 and continuing on the 7th and 21st of each month, ERIC shall pay to VERONICA as and for statutory guideline child support directly into her checking account the sum of $2,776.00 per month payable in two (2) equal installments of $1,388.00 on the 7th and 21st of each month until the emancipation of the minor children, as defined herein, at which time ERIC's child support obligation to pay child support shall terminate. ERIC's child support obligation represents twenty-eight percent (28%) of the nets of his current gross income of $211,000. In addition to his monthly child support payment, ERIC shall pay to VERONICA an amount equal to twenty-eight percent (28%) of any additional net income received from any other source including but not limited to bonuses, commissions, compensation for consulting projects, and other forms of income, as and for additional child support, within seven (7) days of his receipt along with proof of the gross income paid and calculation of net income if not set forth on a paystub. Upon any modification to the payment of maintenance by ERIC to VERONICA, as set forth herein above in Paragraphs 4.02 and .03 (a "modifying event"), ERIC's child support payments shall be adjusted pursuant to the child support statute. Upon the occurrence of such a modifying event, the parties shall attempt to mutually agree

to the correct amount of child support to be paid by ERIC to VERONICA prior to either party filing a petition with the Court. Upon emancipation of Sydney, ERIC shall pay child support to VERONICA in an amount equal to twenty percent (20%) of his net income from all sources. If either party seeks to modify child support based upon a change in the law, either party can seek to modify the amount of maintenance, but not the duration. If either party seeks to modify child support based upon a change of income, maintenance shall not be modifiable."

¶ 6    The parties' child support provision conformed with the guidelines set forth in section 505 of the Illinois Marriage and Dissolution of Marriage Act (IMDMA or Act) that were in effect at the time the MSA was executed. See 750 ILCS 5/505(a)(1) (West 2016) (requiring a noncustodial parent of two children to pay 28% of his net income to the custodial parent). Unlike the parties' maintenance provision, their child support provision did not impute a specific income to Veronica to calculate the amount that Eric was required to pay.

¶ 7    On May 5, 2016, the circuit court entered a judgment of dissolution of marriage that approved and incorporated the terms reached by the parties in their JPA and MSA. Thereafter, in May 2017, Veronica obtained full-time employment at Northwestern University's Department of Nanotechnology as an administrative coordinator, earning a salary of $53,000 per year. She subsequently received a promotion to senior program coordinator in September 2017, which increased her salary to $57,240 annually. On September 22, 2017, following Veronica's promotion, Eric filed a petition to modify his child support obligation. In his petition, Eric argued that the change in Veronica's employment status constituted a "substantial change in circumstances warranting a modification of [his] child support obligation." In support of his claim, Eric contended that at the time of the parties' divorce, Veronica earned "minimal" income

as a part-time substitute teacher and that she was "earning more than a nominal income" in her current full-time position, which justified a decrease in the amount of child support he was obligated to pay. Shortly before Eric's filing, the Illinois legislature had amended the child support guidelines, and Eric argued that the new guidelines, which utilized an "income-shares" approach, should be applied by the circuit court to calculate his modified child support obligation.[3] Thereafter, in October 2017, shortly after filing his petition, Eric commenced employment with a new company. He received a $20,000 signing bonus and his salary increased to $247,000 per year.

¶ 8    Veronica filed a response to Eric's petition in which she admitted that she had obtained full-time employment at Northwestern University following the divorce. Veronica argued, however, that the change in her employment status did not constitute a substantial change in circumstances warranting modification of Eric's child support obligation because the increase in her earnings after obtaining full-time employment "was wholly consistent with her income as contemplated by the parties in the Judgment for Dissolution of Marriage." Moreover, she contended that the reason that Eric filed the petition seeking to modify his child support obligation was not due to a true change in the parties' circumstances; rather, it was to take advantage of the recent change in

---

[3] Prior to 2017, the IMDMA's child support guidelines required a noncustodial parent to pay a set percentage of his or her income to the custodial parent. See 750 ILCS 5/505(a)(1) (West 2016). As explained above, pursuant to those guidelines, Eric, as the noncustodial parent of two children, was required to pay 28% of his net income to Veronica, the noncustodial parent. *Id.* In 2017, however, the Illinois legislature passed Public Act 99-764 (eff. July 1, 2017), which "drastically" altered the child support guidelines. *In re Marriage of Connelly*, 2020 IL App (3d) 180193, ¶ 16. The new guidelines utilize an "income-shares" approach. *Id.* Under this approach, courts are required to compute child support obligations by "determining the parents' *combined* monthly net income and calculating *each parent's* percentage share of the basic child support obligation." *In re Marriage of Salvatore*, 2019 IL App (2d) 180425, ¶ 18 (citing Pub. Act. 100-15 (eff. July 1, 2017) (adding 750 ILCS 5/505 (a) (1.5)).

the law requiring courts to utilize new guidelines that set forth an income-shares approach to calculate a couple's child support obligations.

¶ 9    In response to the parties' filings, the circuit court presided over a five-day trial[4] to ascertain whether modification of Eric's child support or maintenance obligations was warranted.[5]  During the course of the trial, the parties, through their attorneys offered competing interpretations of the language included in their JPA and MSA as well as the applicability of the new child support guidelines.  In addition, Veronica and Eric each provided testimony about the changes in their respective financial situations following their divorce.

¶ 10    Specifically, at trial, when asked to provide details about the change in her employment status since her 2016 divorce, Veronica acknowledged that she was making significantly more money than she did during the marriage.  Veronica testified that she only worked "occasionally" as a substitute teacher and earned "nominal" income during the marriage.  The tax return that she filed in 2016, the year of her divorce, reflected that she had earned $1,521 as a part-time substitute teacher that calendar year.  On May 1, 2017, after the divorce was finalized, she was hired by Northwestern University as an administrative coordinator, a position that came with an annual salary of $53,000.  She testified that she was promoted to a program coordinator on September 1, 2017, resulting in an increased annual salary of $57,240.  At the time of the trial, Veronica testified that her annual salary had increased to $58,380.  Accordingly, she acknowledged that her earnings from outside employment increased by almost $56,000 since her 2016 divorce when she earned approximately $1,500 substitute teaching; however, if her

---

[4] The trial was conducted on five non-consecutive days: September 28, 2018, October 12, 2018, October 29, 2018, October 30, 2018, and November 1, 2018.
[5] The trial also involved other matters that are not relevant to this appeal.  We only include the evidence necessary to resolve the substantive issues raised in this appeal.

employment earnings were compared to the $20,000 imputed income set forth in the couple's

MSA, the difference was only approximately $38,000. Veronica also acknowledged that a

number of her expenses had decreased following the divorce. Specifically, her housing costs had

decreased from approximately $3,400 per month to $2,782 per month. In addition, her monthly

electricity, telephone, and car payments had decreased as well. Despite the decrease in some of

her monthly living expenses and the increase in her earnings after obtaining full-time

employment, Veronica denied that she was better off financially, explaining that her child-related

expenses had increased as the kids had gotten older.

¶ 11    Eric, in turn, acknowledged that his employment status had also changed following the

divorce. At the time of the divorce, he was earing a gross base salary of $211,000 per year. In

October 2017, however, he commenced employment at a new company. He received a $20,000

signing bonus and an annual salary increased to $247,000. At the time of the hearing, Eric

testified that his yearly salary had increased to $252,000. [6]    He thus acknowledged that his

annual salary had increased by $41,000 following the divorce. He further acknowledged that

Veronica's earnings had only increased by approximately $38,000 if her current salary was

compared to the $20,000 in income imputed to her during the first four years following the

divorce in accordance with the parties' MSA. Despite the increase in his salary, Eric testified

that his financial situation was worse that it was at the time of the divorce, explaining that he

explained that he had incurred substantial attorney fees as a result of their post-judgment

litigation as well as credit card debt.

¶ 12    Following the testimony of the parties, their attorneys delivered closing arguments.

Veronica's attorneys, argued in pertinent part, that Eric's petition to modify his child support

---

[6] At a posttrial hearing, it was revealed that Eric had lost his job.

obligation was not based on a true change in circumstances; rather, he was seeking to benefit from the Illinois legislature's recent decision to adopt an income-shares model to calculate child support obligations. Moreover, although her attorneys acknowledged that she had obtained full-time employment and was earning approximately $58,000 per year, they argued that it did not constitute a substantial change in circumstances because Eric's earnings had also increased. When compared to the $20,000 income imputed to her in the MSA, Veronica's earnings only increased by approximately $37,000 per year, whereas the increase in Eric's annual salary amounted to $41,000 per year. As a result, her attorneys argued that Eric's petition to modify his child support obligations should be denied.

¶ 13    Eric's attorneys, in turn, denied that Eric's petition seeking a decrease in his child support obligation was premised on the recent change in Illinois law; rather, it was based on the fact that Veronica was earning substantially more money than she was at the time of the divorce. Eric's attorneys further argued that the $20,000 in income imputed to Veronica in the MSA was relevant to the issue of maintenance, not child support, and that her earnings from outside sources increased by over $56,000 since the time of the divorce, which constituted a substantial change in circumstances warranting a modification of Eric's child support obligation.

¶ 14    Following the contentious trial, the circuit granted Eric's motion to modify his child support obligation, finding that the evidence presented at trial established that both Veronica and Eric had experienced "a substantial change in income" since their divorce decree was entered. Although the parties disagreed as to whether the $20,000 in income imputed to Veronica in their MSA was relevant only to the issue of maintenance or was relevant to both maintenance and child support, the court found that there was a substantial change in her income whether or not her $58,380 salary at the time of trial was compared her $20,000 imputed income or the $1,521

she earned substitute teaching in 2016. Applying the income shares approach delineated in the current child support statute, the court concluded Eric's child support obligation should be reduced from $2,776 per month to $1,567 per month.

¶ 15    Veronica's motion to reconsider was denied and this appeal followed.

¶ 16    II. ANALYSIS

¶ 17    On appeal, Veronica contends that the circuit court erred in reducing Eric's child support obligation because he failed to establish that there had been a substantial change in the couple's circumstances since the divorce. She argues that the parties contemplated that she would obtain full-time employment at the time that they agreed to the terms of their JPA and MSA, which were incorporated into their divorce decree. As such, Veronica submits that the change in her employment status does not constitute a "substantial change in circumstances" justifying modification of Eric's child support obligation.

¶ 18    Eric, in turn, initially argues that Veronica "waived any argument that the parties' increases in income were contemplated at the time of their divorce" where she failed to raise that argument in the circuit court. On the merits, Eric submits that the circuit court did not abuse its discretion in finding that the increases in the parties' salaries constituted a substantial change in circumstances, which justified a support modification. He contends that Veronica's increase in income, which resulted from her obtaining full-time employment following the parties' divorce, is a "quintessential substantial change in circumstances."

¶ 19    As a threshold matter, we first address Eric's argument that Veronica waived her "contemplation" claim. Although Eric is correct that "arguments made for the first time on appeal are waived" (see *In re Marriage of Pratt*, 2014 IL App (1st) 130465, ¶ 23), Veronica's response to Eric's petition to modify his child support obligation clearly alleged that the change in her

employment status and increase in her income was "contemplated by the parties" at the time that the judgment dissolving their marriage was entered and did not constitute a substantial change in circumstances. We acknowledge that this point was not coherently argued by Veronica's attorneys during the trial; however, the record clearly shows that they did repeatedly dispute Eric's argument that the change in Veronica's employment status and earning capacity constituted a substantial change in circumstances justifying a modification in child support. Based on our reading of the lengthy trial record and the parties' respective pleadings, we decline to find waiver under such circumstances and will address the merit of Veronica's claim that the change in her employment status and earning potential did not constitute a substantial change in circumstances because it was contemplated by the parties at the time of their divorce.

¶ 20 Generally, a circuit court's ruling on a petition to modify child support will not be disturbed absent an abuse of discretion. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *Salvatore*, 2019 IL App (2d) 180425, ¶ 22. Accordingly, a court's decision to modify a party's child support obligation will be upheld unless the ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would agree with the court's ruling. *In re Marriage of Fisher*, 2019 IL App (2d) 170384, ¶ 23; *Connelly*, 2020 IL App (3d)180193, ¶ 13. Where, however, the issue raised on appeal involves the legal effect of a set of undisputed facts, the applicable standard of review is *de novo*. *Salvatore*, 2019 IL App (2d) 180425, ¶ 22. Moreover, the interpretation of a marital settlement agreement, which raises an issue of law, is also subject to *de novo* review. *Blum*, 235 Ill. 2d at 33; *Salvatore*, 2019 IL App (2d) 180425, ¶ 22. When examining such an agreement, the parties' intent must be ascertained by examining the document as a whole and not by examining specific provisions in isolation. *Salvatore*, 2019 IL App (2d) 180435, ¶ 27. Moreover, when a judgment

of dissolution incorporates an MSA and JPA, the judgment will be construed as a single document. *Id.* ¶ 28.

¶ 21    Here, the facts in this case are not in dispute. The dispositive issue is whether the parties, pursuant to the terms of their settlement agreement, contemplated an increase in their respective incomes, at the time that they entered into the agreement. This appeal thus requires this court to interpret the parties' MSA and ascertain the legal effect of a set of undisputed facts. As such, we will employ the *de novo* standard of review. See, *e.g., Salvatore*, 2019 IL 180425, ¶ 23.

¶ 22    Pursuant to Illinois law, " 'both parents have the financial responsibility to support a minor child.' " *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 54 (quoting *In re Marriage of Maczko*, 263 Ill. App. 3d 991, 994 (1992)). Once a child support obligation has been set, it may only be modified "upon a showing of a substantial change in circumstance." 750 ILCS 5/510(a)(1) (West 2016). It is the burden of the party seeking modification of a child support obligation to show that a substantial change in circumstances has occurred since the entry of the original child support order. *Connelly*, 2020 IL App (3d) 180193, ¶ 13. Not all changes in circumstances, however, constitute a "substantial change in circumstances" justifying the modification of a child support obligation, and a court is "afforded wide latitude in determining whether a substantial change in circumstance has taken place." *Id.* ¶¶ 13, 18.

¶ 23    As a general rule, " '[a] substantial change in change in circumstances typically means that the child's needs, the obligor parent's ability to pay, or both have changed since the entry of the most recent support order.' " *Id.* ¶ 18 (quoting *In re Marriage of Verhines*, 2018 IL App (2d) 171034, ¶ 79). Although an increase in the obligor supporting parent's ability to pay may constitute a substantial change in circumstances, courts will not find that there has been a substantial change in circumstances where the increase in the obligor's income is relatively small. See, *e.g., Id.* ¶ 25

(10% increase in salary did not constitute a substantial change in circumstances); *People v. Armstrong*, 346 Ill. App. 3d 818, 822-23 (2004) (same); *In re Marriage of Butler*, 106 Ill. App. 3d 831, 836 (1982) (8% increase in earnings did not constitute a substantial change in circumstances). Similarly, although an increase in a custodial parent's income may also constitute a substantial change of circumstances, "an increase in a custodial parent's income will not be considered a substantial change in circumstances where the increase is small compared to the noncustodial parent's income." *Connelly*, 2020 IL App (3d) 180193, ¶ 20. Finally, courts have also held that "[m]oderate changes in both parties' incomes do not amount to a 'substantial change in circumstances.' " *Id.* ¶ 28. Even where a party's increase in income is significant, it will not be considered a substantial change of circumstances "when the increase was based on events that were contemplated and expected by the trial court when the judgment of dissolution was entered." *Salvatore*, 2019 IL App (2d) 180425, ¶ 24; see also *Connelly*, 2020 IL App (3d) 180193, ¶ 22. Indeed, as a general rule "a substantial change in circumstances will not be found when the parties present circumstances were contemplated when they entered their agreement." *Salvatore,* 2019 IL App (2d) 180425, ¶ 24.

¶ 24    Veronica, relying on the Second District's decision in *Salvatore*, 2019 IL App (2d) 180425 argues that the change in her employment status and increase in her income was contemplated by the parties at the time of their divorce, and as such, cannot constitute a substantial change in circumstances for child support purposes. In *Salvatore*, the couple, who had three children, both worked during the marriage however, the mother was unemployed at the time of their divorce. *Id.* ¶ 8. The couple executed an MSA and JPA, which were incorporated into the divorce judgment, that required the father to pay the mother child support in accordance with the statutory child support guidelines in effect at the time they executed their agreements. *Id*. ¶¶ 3-4. Following the

divorce, the mother obtained employment and the father sought modification of his child support obligation, arguing in pertinent part that the increase in his ex-wife's income constituted a substantial change in circumstances. *Id.* ¶¶ 6, 8. Following a hearing in which both parties testified about their respective financial situations, the circuit court denied the father's request to modify his child support obligation. *Id.* ¶¶ 11-12.

¶ 25     On appeal, the Second District affirmed the circuit court's ruling. In doing so, the court reasoned that although the mother's potential future income was not specifically considered by the parties when they negotiated the terms of the father's original child support obligation in their MSA, there were a number of provisions included in the couple's agreements that indicated that they contemplated the possibility of her future employment. *Id.* ¶ 26. For example, a health insurance provision included in their MSA contained a clause that referenced "either party's employer." *Id.* In addition, a clause in their JPA required each of the parties to provide the other with information pertaining to "their places of employment, and the phone numbers of their places of employment." *Id.* ¶ 29. Another provision in their JPA discussed "work related cancellations." *Id.* The Second District concluded that the aforementioned plural work-related provisions established that the parties "clearly contemplated [the mother's] future employment at the time of the judgment of dissolution." *Id.* ¶ 30. Because it was evident from their agreements that the parties contemplated the mother's future employment, the Second District found that the father could not "rely on the occurrence of an event that he contemplated when he negotiated these other contractual obligations to establish a substantial change in circumstances that would trigger a downward modification of his child support obligation." *Id.* ¶ 32. Accordingly, the Second District found that the circuit court properly denied the father's petition to modify his child support obligation. *Id.*

¶ 26　Veronica submits that the facts in this case are "effectively identical" to those in *Salvatore* because various provisions included in the MSA and JPA as issue reveal that they contemplated a change in her employment status and earning potential at the time they entered into said agreements. In particular, Veronica notes that the parties' JPA included provisions that required each party to keep the other informed of "his or her place of employment, and the telephone numbers of said place of employment" and required them to be flexible and allow for rescheduling of parent time due to "work or other commitments." In addition, a health insurance provision in their MSA contained a discussion of what would occur "if neither Eric nor Veronica has Health Care available to him or her from his or her place of employment."

¶ 27　We acknowledge that the provisions at issue are similar to those discussed in *Salvatore*; however, we do not find them irrefutable evidence that the parties contemplated a change in Veronica's employment status and earnings. Notably, in *Salavatore*, the mother was unemployed at the time that the parties executed their MSA and JPA, and as such, the plural work-related references in their agreements could only be construed as evidence that the couple contemplated her future employment. In contrast, here, the parties' MSA expressly stated that both Veronica and Eric were employed outside the home at the time the agreement was executed. Specifically, the MSA stated that Eric was "employed full- time" and that Veronica was "employed part-time outside the home as a substitute teacher." Accordingly, unlike the situation in *Salvatore*, because that the agreements at issue in this appeal specified that both parties were employed, the plural work-related provisions included in their JPA and MSA are not clear evidence that they contemplated the possibility that Veronica would obtain full-time employment and a meaningful increase in her earnings following the divorce.

¶ 28    Veronica's argument that the parties contemplated a change in her employment status and earning potential, however, is not limited to the plural work-related provisions in the parties' JPA and MSA. She notes that before the parties executed their MSA and JPA, she agreed to an order that required her to "immediately retain a career counseling/outplacement service so that she c[ould] evaluate and seek gainful employment." Although the phrase "gainful employment" is not defined, we agree that the existence of the order shows that the parties contemplated a change in her employment status beyond that of part-time employment that she had during the marriage. Moreover, the increase in the income imputed to Veronica in the parties' MSA provides additional evidence that the parties clearly contemplated a change in her employment status and increase in her earning potential. As explained above, Eric's maintenance obligation was calculated by imputing an income of $20,000 to Veronica during the first four years following the divorce. An income of $65,000 was imputed to her in the fifth year following the divorce. Although no specific income was expressly imputed to her for child support purposes, the provisions in the parties' agreements must be considered as a whole and not viewed in isolation. *Salvatore*, 2019 IL App (2d) 180425, ¶ 27. Here, we find that the imputed income schedule contained in the parties' MSA provides incontrovertible evidence that they contemplated a significant change in Veronica's employment status and an increase in her earning potential. The parties expressly considered that Veronica, given her previous educational and employment history, would be able to obtain gainful employment and earn approximately $65,000 annually and the testimony at trial established that she had essentially accomplished what the parties had contemplated: she obtained full-time employment and was earning $58,380 annually. Given that such a change was specifically contemplated by the parties at the time of the divorce, it cannot constitute a substantial change in circumstances justifying a

modification of Eric's child support obligation. *Id.* ¶ 32. Accordingly, we find that the circuit court erred in reaching the opposite conclusion.

¶ 29    We further find that the circuit court also erred in concluding that the increase in Eric's salary also amounted to a substantial change in circumstances because that increase was also contemplated by the parties. As set forth above, pursuant to the parties MSA, Eric agreed to pay Veronica $2,776 per month in child support, an amount that "represent[ed] twenty-eight percent (28%) of the nets of his gross income of $211,000." The parties' MSA also included a true-up provision which provided as follows: "In addition to his monthly child support payment, ERIC shall pay to VERONICA an amount equal to twenty-eight percent (28%) of *any additional net income received* from any other source including but not limited to bonuses, commissions, compensation for consulting projects, and other forms of income, as and for additional child support ***." This true-up provision shows that the parties contemplated that Eric earnings could exceed the $211,000 salary that he was earning at the time of the divorce. As such, the increase in his salary cannot constitute a substantial change in circumstances justifying a modification of his child support obligation. See, *e.g., Connelly*, 2020 IL App (3d) 180193, ¶ 25 (finding that an increase in the ex-husband's salary could "never constitute a substantial change in circumstances" because the parties' MSA contained a true-up provision in that required him to pay 28% of any earnings he made in addition to the salary he was earning at the time of the divorce, which showed that an increase in his earnings was contemplated by the parties).

¶ 30    Because the record shows that the parties specifically contemplated an increase in both of their earnings following the divorce, we conclude that the court erred in finding that the increase in their

respective earnings constituted a substantial change in circumstances justifying modification of

Eric's child support obligation.  We therefore reverse the judgment of the circuit court.[7]

¶ 31      III.  CONCLUSION

¶ 32      Reversed.

---

[7] Because we find that circuit court erred in concluding that there had been a substantial change in circumstances, we need not address Veronica's claim that the court erred in calculating Eric's modified child support obligation.