2026 IL App (1st) 242290

First District
Third Division
May 27, 2026

No. 1-24-2290

|  |  |  |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | Appeal from the Circuit Court |
| MELVIN COX JR., | ) | of Cook County. |
| | ) | |
| Petitioner-Appellant, | ) | No. 2018 D 10858 |
| | ) | |
| and | ) | The Honorable |
| | ) | Geri Pinzur Rosenberg, |
| DYANI COX, | ) | Judge Presiding. |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

JUSTICE REYES delivered the judgment of the court, with opinion.
Presiding Justice Martin and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1      The instant appeal arises from proceedings related to the dissolution of the marriage of petitioner Melvin Cox Jr. and respondent Dyani Cox. As part of the dissolution proceedings, the circuit court entered a judgment for dissolution of marriage which set forth certain obligations concerning child support for the parties' three minor children. Petitioner, respondent, and the children all subsequently moved out of Illinois. In 2024, respondent filed a motion in the circuit court of Cook County concerning the child support award, which the circuit court granted. On appeal, petitioner contends that the circuit court lacked the authority to modify the child support award where all of the involved parties had since left the state and further argues that the circuit court's decisions were incorrect on their merits. We previously dismissed petitioner's appeal for lack of jurisdiction but granted his petition for rehearing after permitting him to supplement the record with evidence of this court's jurisdiction.

Accordingly, we withdraw our prior decision, and after considering the merits of petitioner's appeal, we now affirm.

¶ 2                                          BACKGROUND

¶ 3                                    *Dissolution of Marriage*

¶ 4         The parties were married in 2010, and had three children, born in 2013, 2015, and 2016. Petitioner filed a petition for dissolution of marriage on December 12, 2018; respondent filed a counterpetition for dissolution of marriage on April 25, 2019. After a trial, on September 22, 2020, the circuit court entered a judgment for dissolution of marriage (dissolution judgment), in addition to an allocation of parental responsibilities judgment (parental responsibilities judgment) which named respondent as the parent with the majority of parenting time as well as the parent with final significant decision-making responsibilities regarding the parties' children.

¶ 5         As relevant to the instant appeal, the dissolution judgment ordered petitioner to pay child support to respondent in an amount based on their respective earned incomes. He was also ordered to satisfy a child support arrearage and to contribute to the children's health insurance premiums through monthly payments. The dissolution judgment generally provided that respondent was responsible for 60% and petitioner was responsible for 40% of the child care and school expenses, summer camp costs, and uncovered medical expenses.

¶ 6         In a provision entitled "True-up," the dissolution judgment required the parties to exchange their W-2 forms and year-end paycheck stubs by February 28 of each year and to exchange filed income tax returns within 14 days of receiving accepted returns from federal and state agencies. The purpose of the exchange was to determine whether petitioner had paid too much or too little child support based on the statutory income guidelines. Within 60 days of the

recalculation, petitioner was required to pay respondent any additional amounts owed, or respondent was required to refund any overpayment to petitioner.

¶ 7                                                                 *Relocation of Parties*

¶ 8        On March 3, 2021, respondent filed a motion seeking court permission to relocate to Detroit, Michigan, with the parties' minor children. Respondent claimed that petitioner initially agreed to a modified parenting schedule in connection with the move, but later expressed opposition to the proposed relocation, stating that he was unwilling to change the parenting schedule. Petitioner filed a *pro se* response to the motion, objecting to the proposed relocation and requesting that he become the parent with the majority of the parenting time.

¶ 9        On September 2, 2021, the circuit court granted respondent's motion to relocate with the children. In addition, in November 2021, the circuit court modified the parties' parenting time under the parental responsibilities judgment, as petitioner had since relocated to Georgia. The order detailed the parties' parenting time schedules during the school year, the summer, and school breaks. The circuit court also entered an order for support, based on the parties' true-up concerning their 2020 annual incomes.

¶ 10        In June 2022, petitioner filed a petition for rule to show cause and for a finding of indirect criminal contempt against respondent, contending that respondent had failed to comply with the terms of the parental responsibilities judgment by refusing to transport the children for petitioner's spring break or summer parenting time. The circuit court struck petitioner's petition for rule to show cause "because this Court lacks jurisdiction over this matter, as neither Petitioner, Respondent nor the minor children continue to live in the state of Illinois."

¶ 11                                      *2024 Proceedings*

¶ 12        On July 16, 2024, respondent filed a *pro se* motion to modify child support, asking the circuit court to increase petitioner's child support obligation due to an alleged substantial increase in his income. On the same day, she also filed a *pro se* petition for rule to show cause, claiming that since 2022, petitioner had failed to pay approximately $6,000 in child support and had failed to reimburse approximately $1,500 in extracurricular and healthcare expenses. On July 24, 2024, with the parties present via Zoom, the circuit court entered an order referring the parties to a hearing officer for a hearing on modification of child support. In addition, the circuit court dismissed respondent's petition for rule to show cause without prejudice "as it is legally insufficient." The circuit court gave the parties until August 14, 2024, to file appearances either through counsel or on their own behalf.

¶ 13        On August 14, 2024, petitioner filed a *pro se* appearance. In addition, petitioner filed a *pro se* answer, as well as *pro se* affirmative defenses, denying that there had been a substantial increase in his income. On August 22, 2024, respondent filed an appearance through counsel.

¶ 14        On September 11, 2024, respondent filed another petition for rule to show cause—this time through counsel—alleging that petitioner had failed to pay approximately $6,200 in child support and failed to reimburse approximately $2,000 in expenses. In response, petitioner claimed that he had not received receipts or proof of payment for expenses, as required. He also contended that respondent had failed to provide her 2022 or 2023 income tax returns, as required by the dissolution judgment, which prevented a calculation of his overpayment or underpayment of child support expenses. He also filed objections to portions of the hearing officer's recommendations.[1]

---

[1]The hearing officer's recommendations are not included in the record on appeal.

¶ 15        Following an evidentiary hearing, the circuit court entered a judgment on October 17, 2024, in favor of respondent and against petitioner in the amount of $9,443.07. In a separate written order, the circuit court found that there had been a substantial change of circumstances since the last child support order was entered on November 10, 2021, that "[t]he parties can conduct an annual true-up without exchanging income tax returns," and that petitioner had willfully and contumaciously refused to comply with the previous court orders to pay child support and expenses. The circuit court accordingly modified petitioner's support obligation, ordered him to pay $7,452.72 in child support arrearages and $1,990.35 in unreimbursed expenses, and granted respondent leave to file a petition for attorney fees.

¶ 16        On November 7, 2024, respondent filed a petition for attorney fees, requesting that petitioner pay $5,010 in attorney fees. On November 15, 2024, the circuit court entered an order granting petitioner until December 13, 2024, to file a response to the fee petition and setting the matter for hearing on January 14, 2025.

¶ 17        On November 18, 2024, petitioner filed a notice of appeal from the October 2024 order, requesting that the order be vacated and that the circuit court be ordered to "[e]nforce Section C of the September 22, 2020, Judgement [*sic*] for Dissolution. Require [respondent] prove all aspects of C4, C7 and C9 were explicitly followed before seeking courts['] assistance in matters pertaining to child support and child-related expenses." As relevant to the instant appeal, "Section C" of the dissolution judgment refers to the child support provisions. More specifically, "C4 [and] C7" are the provisions requiring respondent to provide receipts or proof of payment for uncovered medical expenses and extracurricular activity expenses, while "C9" is the true-up provision.

¶ 18    On appeal, we initially found we lacked appellate jurisdiction to consider petitioner's claims, given the presence of the pending fee petition. We noted, however, that if the fee petition had been resolved during the pendency of the appeal, there would no longer be any pending matters serving as a jurisdictional impediment. As such, we observed that petitioner in that circumstance would be able to file a petition for rehearing and seek to supplement the record with evidence of our jurisdiction. Since the petition had, in fact, been resolved during the pendency of the appeal, petitioner sought to supplement the record with evidence of this court's jurisdiction and, after allowing him to do so, we granted petitioner's petition for rehearing. Accordingly, we withdraw our prior decision and now consider the merits of petitioner's claims.

¶ 19                                   ANALYSIS

¶ 20    On appeal, petitioner, who is appearing *pro se*, raises three issues. First, he contends that the circuit court lacked the authority to modify the child support order where the parties all resided out of state and not all parties involved in this litigation had consented to Illinois retaining jurisdiction. Second, he claims that the circuit court erred in failing to enforce the true-up provision of the dissolution judgment. Finally, petitioner argues that the circuit court erred in modifying the child support award.

¶ 21                          *Authority to Modify Support Award*

¶ 22    We first consider whether the circuit court had the authority to enter the October 17, 2024, order in which it modified petitioner's support obligations. Petitioner contends that the circuit

court lacked such authority where all parties had left Illinois and there was no consent for the Illinois court to retain jurisdiction over the matter.

¶ 23    Petitioner's arguments are based on the requirements of the Uniform Interstate Family Support Act (UIFSA) (750 ILCS 22/100 *et seq.* (West 2024)), which provides a unified process to modify and enforce child support orders across state borders. See *In re Marriage of Gulla*, 234 Ill. 2d 414, 426 (2009). Here, where both parties and the minor children have left Illinois, the UIFSA sets forth certain requirements concerning which court may consider matters pertaining to child support issues. Our interpretation of such requirements is a matter which we review *de novo*. *Collins v. Department of Health & Family Services ex rel. Paczek*, 2014 IL App (2d) 130536, ¶ 15. In interpreting a statute, our primary objective is to give effect to the intent of the legislature, and "the most reliable indicator of intent is the language of the statute given its plain, ordinary, and popularly understood meaning." *Id.* In addition, as a uniform statute, in construing such legislation, we should give effect to the legislative purpose of promoting harmony in the law and must consider the need to promote uniformity among the states which have enacted it. *Gulla*, 234 Ill. 2d at 426-27.

¶ 24    As relevant to the instant case, section 205 of the UIFSA concerns the modification of a child support order. Specifically, section 205 provides:

> "(a) A tribunal of this State that has issued a child-support order consistent with the law of this State has and shall exercise continuing, exclusive jurisdiction to modify its child-support order if the order is the controlling order and:
>
> > (1) at the time of the filing of a request for modification this State is the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

(2) even if this State is not the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued, the parties consent in a record or in open court that the tribunal of this State may continue to exercise jurisdiction to modify its order." 750 ILCS 22/205(a) (West 2024).

We note that a support order is the "controlling order" if there is only one tribunal which has issued a child support order. *Id.* § 207(a). Here, the parties agree that the only child support order entered in this matter is the one entered by the Illinois court. There is a suggestion in the parties' briefs that petitioner filed a petition in Michigan concerning parenting time that may have also involved issues concerning child support, but respondent represented in her brief on appeal that the Michigan court found that it lacked jurisdiction over the issue of child support and did not grant any relief on that issue. Accordingly, the Illinois order is the "controlling order" for purposes of the UIFSA. Petitioner, however, contends that, under section 205, where none of the parties or the children reside in Illinois and where they did not consent to the Illinois court's jurisdiction, the circuit court lacked subject matter jurisdiction to modify the support order.

¶ 25    We observe, however, that while the statute uses the term "jurisdiction," such usage is slightly misleading as it does not, in fact, affect the circuit court's subject matter jurisdiction under Illinois law. Petitioner's confusion on this point is nonetheless understandable, as other jurisdictions—and even some Illinois courts—have interpreted the same language to represent a limit on the court's subject matter jurisdiction. See *Collins*, 2014 IL App (2d) 130536, ¶ 23 ("Virtually every jurisdiction that has addressed this issue has concluded that the issuing tribunal loses subject matter jurisdiction when all of the parties to the child support action have moved outside the state." (Emphasis and internal quotation marks omitted.) (citing *In re*

*Marriage of Haugh*, 170 Cal. Rptr. 3d 683, 690 (Ct. App. 2014))); see also *In re Marriage of Vailas*, 406 Ill. App. 3d 32, 41 (2010) (finding that, by adopting the UIFSA, the legislature had chosen to create a specific statutory process for establishing personal and subject matter jurisdiction with respect to child support orders).

¶ 26    Our supreme court has made clear, however, that with the exception of the circuit court's power to review administrative actions, "a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." *McCormick v. Robertson*, 2015 IL 118230, ¶ 19. Thus, "[s]o long as a matter brought before the circuit court is justiciable and does not fall within the original and exclusive jurisdiction of [the supreme] court, the circuit court has subject matter jurisdiction to consider it." *Id.* ¶ 20. While the legislature may create new justiciable matters through legislation, the establishment of such a new justiciable matter neither extends nor constrains the circuit court's jurisdiction, as the court's jurisdiction flows from the constitution. *Id.* ¶ 23. "The *only* consideration is whether it falls within the general class of cases that the court has the inherent power to hear and determine. If it does, then subject matter jurisdiction is present." (Emphasis in original.) *Id.*

¶ 27    In *McCormick*, our supreme court considered a provision of the Uniform Child-Custody Jurisdiction and Enforcement Act (750 ILCS 36/101 *et seq.* (West 2010)), which similarly discussed when the circuit court would have "jurisdiction" to enter a certain order—there, an initial child custody determination. See *McCormick*, 2015 IL 118230, ¶ 24. As in this case, one of the parties contended that the circuit court lacked subject matter jurisdiction to enter the order where there was a lack of compliance with the statutory requirements. *Id.* ¶ 12. The supreme court disagreed:

9

"To be sure, section 201 does speak in terms of 'jurisdiction' when describing the conditions which must be met before an Illinois court will consider and decide the question of initial child custody. As used in the statute, however, 'jurisdiction' must be understood as simply a procedural limit on when the court may hear initial custody matters, not a precondition to the exercise of the court's inherent authority. It could not be more, for as we have held, that authority emanates solely from article VI, section 9, of our constitution (Ill. Const. 1970, art. VI, § 9)." *Id.* ¶ 27.

Where the determination of child custody presented a justiciable matter, the supreme court found that it fell within the subject matter jurisdiction of the circuit court. *Id.* ¶ 28. As such, regardless of whether the circuit court erred in considering the matter despite the lack of compliance with the statutory requirements, it had subject matter jurisdiction to entertain the complaint and its resulting order was not void. *Id.*; *cf. In re Luis R.*, 239 Ill. 2d 295, 304 (2010) (statute did not limit subject matter jurisdiction of circuit court despite statute's use of the phrase " 'exclusive jurisdiction' ").

¶ 28    The same result is true in the instant matter. Despite the fact that section 205 of the UIFSA discusses the circuit court's "continuing, exclusive jurisdiction," compliance with its terms does not affect the circuit court's subject matter jurisdiction. See *In re Parentage of Jade J.*, 2025 IL App (1st) 241803, ¶ 18; *id.* ¶ 95 (Howse, J., dissenting); see also *In re Marriage of Armstrong*, 2016 IL App (2d) 150815, ¶¶ 20-22 (finding that section 211 of the UIFSA, which discusses a court's " 'continuing, exclusive jurisdiction' " to modify a spousal support order, does not limit the circuit court's subject matter jurisdiction).

¶ 29    We observe that our supreme court in *Zaabel v. Konetski*, 209 Ill. 2d 127 (2004), interpreted an earlier version of section 205 in the context of a respondent's challenge to the circuit court's

subject matter jurisdiction. While the supreme court's discussion in that case could arguably be read to suggest that section 205 implicates the circuit court's subject matter jurisdiction to modify a support order, the supreme court did not make such a finding in that case and, as discussed, later clarified in *McCormick* and in *Luis R.* that subject matter jurisdiction is conferred only by the constitution even where the statute purports to set forth a jurisdictional limitation. Accordingly, we reject petitioner's contention that reversal is necessitated on that basis.

¶ 30     Compliance with the requirements of section 205 does, however, implicate the circuit court's personal jurisdiction over petitioner. The circuit court had personal jurisdiction over petitioner with respect to the entry of the initial support order, as all of the parties and the children resided in Illinois at the time. See 750 ILCS 22/201(a) (West 2020). Under the UIFSA, personal jurisdiction relating to the support order "continues as long as a tribunal of this State has continuing, exclusive jurisdiction to modify its order or continuing jurisdiction to enforce its order as provided by Sections 205, 206, and 211" of the statute. 750 ILCS 22/202 (West 2024). Accordingly, the Illinois court would continue to have personal jurisdiction over petitioner if there is "continuing, exclusive jurisdiction" under section 205.

¶ 31     As an initial matter, however, we observe that the requirements of section 205 apply only to modification of a support order, not to enforcement of such an order, which is governed by section 206 of the UIFSA. See *id.* §§ 205, 206. In this case, respondent filed two motions: a motion to modify the support award and a petition for rule to show cause based on petitioner's alleged noncompliance with the terms of the existing support order. To the extent that petitioner argues that the circuit court had no jurisdiction to enter an order concerning the latter due to its failure to satisfy the requirements of section 205, such an argument has been

expressly rejected by our supreme court. See *Zaabel*, 209 Ill. 2d at 135 (section 205 applies only to modifications of support orders, not enforcement). Petitioner has not raised any arguments concerning section 206, so he has forfeited any contention on appeal that section 206 deprived the circuit court of personal jurisdiction over the petition for rule to show cause. See *id.* at 136 (declining to consider forfeited issue where "the interest of justice does not require that we search for arguments that [the appellant] himself has made no attempt whatsoever to provide"). Accordingly, we consider only whether the circuit court had personal jurisdiction with respect to the motion to modify support.

¶ 32    As noted, since none of the parties reside in Illinois, the Illinois court has continuing, exclusive jurisdiction to modify a support order under section 205 only where "the parties consent in a record or in open court that the tribunal of this State may continue to exercise jurisdiction to modify its order." 750 ILCS 22/205(a)(2) (West 2024). Section 205 does not define what is required to establish "consent" to the circuit court's continued jurisdiction over the support order. In addition, a different division of this court recently observed that there is scant Illinois authority on the topic. See *Jade J.*, 2025 IL App (1st) 241803, ¶ 17.

¶ 33    We observe, however, that one method of establishing personal jurisdiction over a nonresident with respect to a proceeding to establish or enforce a support order is where "the individual submits to the jurisdiction of this State by consent in a record, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction." 750 ILCS 22/201(a)(2) (West 2024). In other words, "consent in a record" is a form of "submit[ting] to the jurisdiction of this State," at least in the context of an initial support order or the enforcement of such an order. See *id.* In *Jade J.*, a divided panel found that a party's conduct may demonstrate the requisite consent in certain circumstances,

even where the party did not file a formal appearance or responsive document. *Jade J.*, 2025 IL App (1st) 241803, ¶ 26.

¶ 34 In this case, however, petitioner filed both an appearance and responsive documents with respect to both respondent's petition for rule to show cause and her motion to modify child support, in addition to fully participating in court proceedings. Under Illinois law, this alone suffices to waive any objection to the circuit court's personal jurisdiction as, subject to certain exceptions not applicable here, a party must object to the court's personal jurisdiction prior to filing any other pleading. See 735 ILCS 5/2-301(a-6) (West 2024). Here, petitioner did not raise any challenge to the circuit court's jurisdiction until his brief on appeal, long after filing his appearance and responsive documents with respect to respondent's motion to modify support. Accordingly, petitioner waived any objections to the circuit court's personal jurisdiction. See *Municipal Trust & Savings Bank v. Moriarty*, 2021 IL 126290, ¶ 25 (defendant waived any objection to personal jurisdiction where he voluntarily submitted to the jurisdiction of the circuit court by filing a written appearance and appearing in court on the plaintiff's motion); *Curry v. Corbly*, 2021 IL App (3d) 170778-U, ¶ 32 (defendant waived any objection to personal jurisdiction where he did not challenge the circuit court's jurisdiction prior to filing his answer to the complaint).

¶ 35 Even if not waived, however, petitioner's conduct amply demonstrates his affirmative consent to the Illinois court's jurisdiction. Specifically, several years after all parties had left Illinois, respondent filed a petition for rule to show cause concerning allegedly unpaid support and a motion to modify support in the Illinois court. Both petitioner and respondent were present via Zoom when the motions were heard by the circuit court, and the circuit court gave them leave to file appearances and also referred them to a hearing officer for a hearing on

modification of the support obligation. Petitioner did, in fact, file an appearance by checking a box on a court-provided form which indicated: "I do not have a lawyer and I am entering my own appearance in this case. *With this Appearance form, I am telling the court that I am participating in this case.*" (Emphasis added.) On the same day, he filed an answer to respondent's motion to modify support, denying her allegations as to his annual income, and separately filed affirmative defenses to the motion, alleging that there was no substantial increase to his income and that the current support order had been in place for less than three years.

¶ 36    After respondent filed an amended petition for rule to show cause, petitioner was similarly present in court for a status hearing on the pending matters and filed a response to the amended petition. In addition, while its transcript is not included in the record on appeal, petitioner appears to have participated in an evidentiary hearing before a hearing officer concerning the modification of his support obligation. After the hearing officer issued recommendations on the matter, petitioner filed objections to certain portions of the recommendations. Finally, the record reflects that petitioner was present in court and provided argument concerning respondent's motions prior to the circuit court's order ruling on them. Petitioner's full participation in the court proceedings—in filing an appearance, in filing responsive documents, and in his active involvement in multiple court hearings—more than adequately evidences consent to the Illinois court's continuing jurisdiction over the matter.[2]

---

[2]On appeal, petitioner contends that there must be written consent to jurisdiction. The statute, however, does not use the term "written" and, indeed, expressly provides that the consent may be "in open court," suggesting that a writing is not necessary. See 750 ILCS 22/205(a)(2) (West 2024); compare *id.* (providing for modification of a support order issued by an Illinois court where the parties "consent in a record or in open court"), with *id.* § 611(a)(2) (providing for modification of a support order issued by another state where the parties "have filed consents in a record").

¶ 37        Finally, we find unpersuasive petitioner's contention that the circuit court's lack of jurisdiction had been previously litigated and was therefore barred by collateral estoppel. Specifically, in June 2022, petitioner had filed a petition for rule to show cause concerning respondent's compliance with the parenting time provisions of the parental responsibilities judgment. The circuit court entered an order the same day, striking the petition "because this Court lacks jurisdiction over this matter, as neither Petitioner, Respondent nor the minor children continue to live in the state of Illinois."

¶ 38        First, collateral estoppel is inapplicable to this case, as the circuit court's striking of the motion on jurisdictional grounds is not a final judgment on the merits in a prior adjudication. See *Gumma v. White*, 216 Ill. 2d 23, 38 (2005) (setting forth requirements for collateral estoppel). More importantly, it was also not a decision on an identical issue. See *id.* An order concerning child custody issues is governed by the Uniform Child-Custody Jurisdiction and Enforcement Act (750 ILCS 36/101 *et seq.* (West 2024)), while an order concerning child support is governed by the UIFSA. Thus, the circuit court's determination that it lacked jurisdiction over a child custody matter under the requirements of the applicable statute has no bearing on whether the circuit court is permitted to consider a child support matter under an entirely different statute. Moreover, the circuit court's jurisdiction in this case is based on petitioner's actions two years after the entry of the earlier order, namely, his affirmative actions in consenting to the circuit court's jurisdiction, as set forth above. Consequently, the circuit court's decision in each instance was based on different factual circumstances and the finding on the child custody matter in no way precluded the circuit court from asserting jurisdiction over the child support order at issue here.

¶ 39                              *Failure to Enforce Certain Provisions*

¶ 40          Petitioner next claims that the circuit court erred in failing to enforce certain provisions of the dissolution judgment. Specifically, petitioner contends that respondent did not provide her tax returns, as required in the true-up provision, and failed to support her request for child-related expenses by providing receipts within 14 days. We observe that petitioner's arguments arose from his response to respondent's petition for rule to show cause, in which she alleged that respondent had failed to comply with his support obligations. In essence, petitioner contended that he was not required to make his support payments so long as respondent's obligations to provide certain information remained outstanding. In finding that petitioner had willfully and contumaciously refused to comply with the terms of the dissolution judgment, the circuit court found that "[t]he parties can conduct an annual true-up without exchanging income tax returns" and that respondent had incurred legitimate child-related expenses "for which she has submitted receipts or proof of payment to Petitioner."

¶ 41          A judgment is construed like any other written instrument. *In re Marriage of Breslow*, 306 Ill. App. 3d 41, 57 (1999). While an unambiguous judgment will be enforced as drafted, "an ambiguous judgment may be read in conjunction with the entire record and construed in accordance therewith." *Id.* In addition, we observe that in this case, the parties did not enter into a marital settlement agreement; instead, the dissolution judgment was entered after the circuit court heard testimony and considered the parties' stipulations and exhibits. Where a circuit court is interpreting its own orders, we review such an interpretation deferentially, as the court is in the best position to interpret its own orders. *Wilson v. Humana Hospital*, 399 Ill. App. 3d 751, 762 (2010); *Board of Trustees of Community College District No. 508 v. Rosewell*, 262 Ill. App. 3d 938, 965 (1992).

¶ 42    With respect to petitioner's contentions concerning the necessity of tax returns, the dissolution judgment provided:

> "The parties shall exchange W-2s, year-end paycheck stubs (with YTD itemized income) by February 28th of each year, and the parties shall exchange filed income tax returns within 14 days of receiving accepted returns from federal and state agencies, for the purpose of calculating any additional child support that [petitioner] may owe or may have overpaid as a result of either party's actual income for the year. The parties shall apply statutory guidelines for child support to any such additional income to determine the amount of child support owed. If additional support is owed, [petitioner] shall pay that additional amount to [respondent] within 60 days of the recalculation. If support has been overpaid, [respondent] shall refund the overpaid support to [petitioner] within 60 days of the recalculation."

In response to petitioner's reliance on this provision in defense of the petition for rule to show cause, the circuit court found that "[t]he parties can conduct an annual true-up without exchanging income tax returns."

¶ 43    The meaning of the circuit court's finding is not entirely clear on the record before us, as there is no report of proceedings setting forth the arguments presented to the circuit court at the hearing on the matter. Accordingly, the parties take different views as to the effect of the circuit court's finding. Specifically, respondent claims that the circuit court's finding was merely an interpretation of the existing terms of the dissolution judgment—*i.e.*, clarifying that the tax returns were not a material requirement under the judgment but instead were one of several ways to prove income. Petitioner, by contrast, contends that the finding represented a modification of the dissolution judgment—*i.e.*, that in the future, the parties would no longer

17

be required to exchange tax returns.[3] We agree with petitioner that the circuit court's finding represented a modest modification of the dissolution judgment.

¶ 44     We observe that, in interpreting or clarifying an order, "the attention of the circuit court is directed to its original *intent*, *i.e.*, the court is asked to *remember* its original judgment, not to revisit it." (Emphases in original.) *Breslow*, 306 Ill. App. 3d at 54-55. By contrast, a modification of an order imposes new or different obligations on the parties. See *In re Marriage of Hall*, 404 Ill. App. 3d 160, 165 (2010). Here, the clear terms of the dissolution judgment provided that "the parties shall exchange filed income tax returns within 14 days of receiving accepted returns from federal and state agencies." By removing that requirement, the circuit court was required to revisit its prior order and thereby modified the dissolution judgment. See *In re Marriage of Nadolski*, 2025 IL App (3d) 240346-U, ¶ 32 (finding that increasing the income and financial disclosure timelines in a marital settlement agreement's true-up provision represented a "slight modification" of the agreement).

¶ 45     A circuit court may modify a judgment concerning child support upon a showing of a substantial change of circumstances. 750 ILCS 5/510(a)(1) (West 2024). In this case, the circuit court expressly found that there had been a substantial change of circumstances since the entry of the last support order. A circuit court's ruling on a motion for modification of child support is generally reviewed for an abuse of discretion, and it will not be disturbed unless it is arbitrary, fanciful, or unreasonable. *In re Marriage of Salvatore*, 2019 IL App (2d) 180425, ¶ 22. While respondent's motion in this case was based on her claims concerning an increase of petitioner's income, the circuit court had the discretion to modify any provision relating to

---

[3]We observe that there is also a third way to read the finding, as a more limited finding with respect to the petition for rule to show cause before it—*i.e.*, that the lack of tax returns was not an acceptable defense for petitioner's failure to pay his support obligation.

the support obligation, including the true-up provision. See *Maguire v. Maguire*, 2024 IL App (5th) 230026-U, ¶ 32 (where father filed motion for downward modification of his support obligation, circuit court had the discretion to impose an obligation to pay medical and dental insurance premiums).

¶ 46       Here, we do not have a report of proceedings concerning either the hearing on respondent's motion for modification of support before the hearing officer or the subsequent court date at which the circuit court entered the modified support order, nor do we have the evidence presented at such hearings. Consequently, we have no basis for determining whether there was a substantial change in circumstances and, if so, whether the circuit court abused its discretion in removing the obligation to provide tax returns. As the appellant, petitioner bears the burden of providing an adequate record to support his claims of error, and in the absence of such a record, we will presume that the circuit court's decision was supported by the evidence. *Clark v. Lay*, 2022 IL App (4th) 220101, ¶ 39 (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392, 394 (1984)). Accordingly, we find no error in the circuit court's slight modification of the terms of the true-up provision.

¶ 47       We similarly find no error in the circuit court's finding that respondent had provided sufficient evidence to support her request for reimbursement of child-related expenses. In a contempt proceeding, the moving party has the burden to establish, by a preponderance of the evidence, that the contemnor had violated a court order. *In re Marriage of Benink*, 2018 IL App (2d) 170175, ¶ 43. Once that burden is satisfied, the contemnor has the burden of showing that the violation was not willful or contumacious and that he had a valid excuse for failing to follow the order. *Id.* "Whether a party is guilty of contempt is a question of fact for the trial court, and a reviewing court should not disturb the trial court's determination unless it is against

the manifest weight of the evidence or the record reflects an abuse of discretion." *In re Marriage of McCormick*, 2013 IL App (2d) 120100, ¶ 17.

¶ 48     Here, respondent alleged that petitioner had failed to pay certain child-related expenses, and petitioner claimed that he had a valid excuse for his noncompliance where respondent had failed to support her expenses with proof of payment, as required by the dissolution judgment. In its order, the circuit court made the factual finding that respondent "has submitted receipts or proof of payment" of her child-related expenses to petitioner and found that petitioner's lack of compliance was willful and contumacious. The circuit court's finding represents a factual finding which we review deferentially. The only evidence in the record concerning respondent's expenses is a single spreadsheet which was attached to her petition and which purports to set forth her expenses. The circuit court's order, however, indicates that respondent also provided testimony at the hearing on her petition for rule to show cause. Without a full evidentiary record, we cannot find that the circuit court's factual finding was against the manifest weight of the evidence.

¶ 49                                    *Child Support Amount*

¶ 50     Finally, petitioner claims that the circuit court erred in its support award. Specifically, petitioner contends that the circuit court relied only on his income and failed to consider the needs of the children in setting the modified award. As noted, a circuit court may modify a judgment concerning child support upon a showing of a substantial change of circumstances. 750 ILCS 5/510(a)(1) (West 2024). "A substantial change in circumstances typically means that the child's needs, the obligor parent's ability to pay, or both have changed since the entry of the most recent support order." *In re Marriage of Verhines*, 2018 IL App (2d) 171034, ¶ 79;

*In re Marriage of Connelly*, 2020 IL App (3d) 180193, ¶ 18; *In re Marriage of Durdov*, 2021 IL App (1st) 191811, ¶ 22.

¶ 51      Section 505 of the Illinois Marriage and Dissolution of Marriage Act governs child support awards, including support awards which are modified pursuant to section 510 of the statute. See 750 ILCS 5/505, 510 (West 2024). Under section 505, in setting a child support award, the circuit court is required to apply the child support guidelines as established by the Department of Healthcare and Family Services unless it determines that application of the guidelines would be inappropriate. *Id.* § 505(a)(2). As noted, a circuit court's ruling on a motion for modification of child support is generally reviewed for an abuse of discretion, and it will not be disturbed unless it is arbitrary, fanciful, or unreasonable. *Salvatore*, 2019 IL App (2d) 180425, ¶ 22.

¶ 52      In this case, petitioner claims that the circuit court failed to consider the needs of the children in modifying the support award but based its award solely on petitioner's income. To the extent that petitioner suggests that the children's needs have not changed, we observe that a substantial change in circumstances may be based solely on an increase in the supporting parent's ability to pay. See *Connelly*, 2020 IL App (3d) 180193, ¶ 19. In addition, as with petitioner's other contentions of error, we have no way of knowing what evidence or argument was presented to the circuit court concerning the children's needs, given the lack of a report of proceedings. See *In re Marriage of Sweet*, 316 Ill. App. 3d 101, 105 (2000) (noting that "an increase in children's needs can be presumed on the basis that they have grown older and the cost of living has risen," and finding mother's testimony that "the children ate more, their clothes cost more, and they had additional expenses for social activities" to be sufficient to demonstrate an increase in the children's needs).

¶ 53    We further observe that the amount of child support awarded by the circuit court was the amount which it calculated was suggested by applying the child support guidelines. There is a rebuttable presumption that "the amount of the child support obligation that would result from the application of the child support guidelines is the correct amount of child support." 750 ILCS 5/505(a)(3.3) (West 2024). Petitioner has not explained why the guideline support amount would be inappropriate in this case.

¶ 54    As a final matter, petitioner suggests that the circuit court was required to issue written findings explaining the basis for modification and any deviation from the guidelines. First, as explained, the circuit court did not deviate from the guidelines in this case and therefore would not need to explain any deviation. In addition, the circuit court made findings that there was a substantial change of circumstances since the entry of the last support order, setting forth the parties' current incomes and the guideline child support in such circumstances. Petitioner does not provide any authority demonstrating that any more detailed findings were required in this case.

¶ 55                                    CONCLUSION

¶ 56    Based on our allowance of rehearing on this matter, our prior decision is withdrawn and the circuit court's judgment is affirmed. The circuit court had the authority to rule on respondent's petition for rule to show cause and motion to modify child support and did not err in its findings concerning either motion.

¶ 57    Affirmed.

*In re Marriage of Cox*, 2026 IL App (1st) 242290

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2018-D-10858; the Hon. Geri Pinzur Rosenberg, Judge, presiding. |
| **Attorneys for Appellant:** | Melvin L. Cox Jr., of Warner Robins, Georgia, appellant *pro se*. |
| **Attorneys for Appellee:** | Joan S. Colen, of Chicago, for appellee. |